**Sourabh HAJELA, Plaintiff,**

v.

**ING GROEP, N.V. et al., Defendants.**

**Civil Action No. 3:07–cv–1107 (JCH).**

United States District Court,
D. Connecticut.

Aug. 26, 2008.

Heena Kapadia, Jacques J. Parenteau, Madsen, Prestley & Parenteau, New London, CT, for Plaintiff.

Emily Burkhardt Vicente, Kenneth L. Dobkin, Hunton & Williams, Atlanta, GA, Felix J. Springer, Day Pitney LLP, Hartford, CT, for Defendants.

## RULING RE: ING GROEP, N.V.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (DOC. NO. 55)

JANET C. HALL, District Judge.

## I. INTRODUCTION

Plaintiff, Sourabh Hajela, brings this action against defendants, ING Groep, N.V., Inc. ("ING Groep"), ING North America Insurance Corporation ("NAIC"), Catherine Smith and Steve Van Wyk, both in their individual capacities, alleging retaliation and wrongful termination in violation of Title VII of the Sarbanes–Oxley Act of 2002[1], 18 U.S.C § 1514A, the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615(a) ("FMLA"), and Connecticut General Statutes §§ 33–1336 and 31–51q. Hajela also asserts common law claims under Connecticut law. See Am. Compl. ¶ 1 (Doc. No. 45).

ING Groep moves the court to dismiss Hajela's Amended Complaint for lack of personal jurisdiction pursuant to Federal

---

1. Hajela also refers to this at the "Corporate and Criminal Fraud Accountability Act of 2002."

Rule of Civil Procedure 12(b)(2). *See* Def.'s Mem. in Support (Doc. No. 55).[2] Hajela opposes the Motion to Dismiss and moves, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404[3] (Doc. Nos. 58). Similarly, the remaining defendants Smith, Van Wyk and NAIC move to transfer the case to New York pursuant to 28 U.S.C. § 1404(a)(Doc. No. 67).

## II. FACTS[4]

### A. *ING Corporate Structure*

Hajela is a resident of Monroe, New York. ING Groep is a business organized pursuant to the laws of the Netherlands. It has various direct and indirect subsidiary companies located in the United States, as well as in other countries. Its principal place of business in the United States is in New York. ING Groep's stock is publicly traded on the New York Stock Exchange. NAIC is a Delaware corporation with its principal place of business in Georgia. NAIC is a wholly owned subsidiary of ING America Insurance Holdings, Inc. ("ING America"). ING America is a wholly owned subsidiary of ING Groep.[5] NAIC is authorized to do business in Connecticut; ING Groep is not.

At all times relevant to his Complaint, not only does Hajela claim that he was an employee of NAIC; Hajela claims that he was also an employee of ING Groep. Am. Compl. ¶ 3. He claims that the two corporations "jointly employed" him because they act as "an integrated employer" based on common management, centralized control of labor relations and common ownership. *Id.*

ING Groep does not have a board of directors. Def's. Aff. ¶ 6. Instead, it is governed by a Supervisory Board and Executive Board. *Id.* The Executive Board is responsible for the day to day management of ING Groep and its "six business lines: Insurance Europe, Insurance Americas, Insurance Asia/Pacific, Wholesale Banking, Retail Banking and ING Direct." Am. Compl. ¶ 20. Each Executive Board member heads one of the six business lines, and they each enjoy "benefits similar to most other employees of ING Group."[6] Thomas McInerney is on the Executive Board and heads the Insurance Americas line of business. He is also listed as the president of NAIC in its filing with the Secretary of State of Connecticut. Defendants Smith and Van Wyk reported directly to McInerney at all times relevant to this case.

---

2. The other named defendants have not moved to dismiss the Complaint for lack of personal jurisdiction.

3. Defendants NAIC, Smith and Van Wyk do not object to transferring the case to New York provided that the Hajela's claims are not severed. Partial Opp. To Mot. to Transfer at 1 (Doc. No. 72). Hajela opposes defendants' Motion to Transfer the entire case. *See* Opp. to Mot. To Transfer (Doc. No. 84). If the court finds that it cannot exercise jurisdiction over ING Groep, Hajela requests that his claims against ING Groep be transferred to New York, but requests that his other claims remain in Connecticut. *See* Pl's. Mem. in Opp. at 39–40.

4. For the purposes of this Motion to Dismiss, the court takes the facts alleged in the plaintiff's Amended Complaint and exhibits as true and draws all inferences in plaintiff's favor. *See DiStefano v. Carozzi N. America, Inc.*, 286 F.3d 81, 81 (2d Cir.2001).

5. ING's United States website describes NAIC as "an indirect subsidiary of ING Groep." Am. Compl. ¶ 38.

6. Hajela takes most of his facts from the ING website and various forms filed with the Securities and Exchange Commission ("SEC"). In one such form, Hajela notes that "ING Group" is a term that is often used to reference "ING Groep, N.V. and its consolidated subsidiaries." *Id.* ¶ 10.

### B. Employment with ING Groep and NAIC

Hajela was interviewed by McInerney and Smith's predecessor, Jacques de Vaucleroy, before being offered his employment. Vaucleroy was the president of ING's Retail Business at ING U.S. Financial Services ("USFS"). He was appointed to the Executive Board in 2006. Hajela was originally recruited to work for ING Groep in Connecticut, in February 2005, by an agent of ING Groep, Thomas Moran. *See id.* ¶ 3. Hajela was provided with an office in Hartford, Connecticut, paid income tax in the state, and resided there for four nights a week. He was offered the job as "Head of eBusiness, USFS" and began work in June 2005. USFS is headquartered in Hartford, Connecticut. He was offered employment on June 1, 2005, via an email from Smith. He accepted employment via email on June 3, 2005, and then sent a signed copy of the letter to Smith in Hartford, Connecticut on June 14, 2005. The letter indicates that it is an offer of employment with "ING." Pl's Mem. in Opp. Exh. A. It further states that Hajela will be a member of "ING Group." *Id.*

Hajela also filled out an employment application on the same day he signed the offer letter. The application bears the ING logo and refers to his employment with "ING." *Id.* at Exh. B. The application also includes a question of whether the applicant is a party to an agreement with another person that may restrict their ability to work with an "ING Company." *Id.* Similar to the application, each of the earnings statements received by Hajela during his employment reflected the ING logo. His business cards and letterhead did as well.[7] The documents do not specifically mention NAIC. In fact, Hajela alleges that the only documents that he received that identified NAIC as his employer was his 2006 W–2 Earning Summary.[8]

Hajela alleges that NAIC posts employment opportunities on the world wide web. These postings display the ING logo. *Id.* ¶ 42. One particular site displayed seventy-six job postings in Connecticut. *Id.* These postings also state that "ING Insurance America is a vital part of ING Group." *Id.* Hajela also alleges that ING Group uses an integrated email system that has a worldwide directory of employees which includes Hajela. *Id.* ¶ 47.

As part of his employment package, Hajela is eligible to receive stock options as part of "ING Group Long Term Equity Ownership Plan" ("LEO"). *Id.* ¶ 60. The offer letter he received stated that LEO is made available to "eligible employees of ING Groep and its subsidiaries." *Id.* LEO made up one third of Hajela's compensation. *Id.*

### C. Events leading to Hajela's Claims against Defendants

When Hajela started work with defendants, Smith had begun work on an initiative called Project Apollo. Shortly after starting, Hajela became concerned about potential mismanagement of Project Apollo. In October 2005, Hajela brought his concerns to Smith's attention. He claimed that approximately two million dollars had been wasted on the project. Around this time, Hajela suggested that Smith replace,

---

**7.** It bears noting although the plaintiff is not required to produce evidence at this stage, Hajela did not include copies of any of these documents in his Amended Complaint or his Opposition to ING Groep, N.V.'s Motion to Dismiss.

**8.** Hajela states that the W–2 identifies his employers as "ING Payroll Management, Inc. Agent of ING No. America Insurance ..." *Id.* ¶ 71.

Leda Csanka, the project manager. At the end of the month, Csanka was removed as team manager.

In the following months, Hajela noticed a "lack of internal controls" and expressed his many concerns to Smith. *Id.* ¶ 81, 82. In January 2006, Hajela suggested to Smith that the violations appeared to be deliberate. *Id.* ¶ 83.

In February 2006, Hajela claims Smith asked him to violate Generally Accepted Accounting Procedures ("GAAP") and SEC regulations by "covering" costs on Project Apollo by committing them to another "expense bucket." *Id.* ¶ 84. Hajela alleges many other incidents of inaccurate reporting of financial information. He further claims that he was forthcoming with his beliefs that these inaccuracies could amount to SEC violations.

In April 2005, Smith gave Hajela his performance evaluation which indicated that out of five, he was rated a two, with one being the best. In the same month, Smith was replaced by Van Wyk. Hajela apprised Van Wyk of his concerns about potential SEC and GAAP violations. He urged Van Wyk to appropriate action. In fact, Hajela urged his own team to investigate all eBusiness finances, including those related to Project Apollo.

On the same day, Smith asked Hajela to come in for a meeting, where he was met by the Head of ING Special Investigations Unit, Paul Reid. Hajela was informed that an "internal investigation process of the corporate audit committee"[9] was underway. *Id.* ¶ 97. Hajela assumed that this investigation was in relation to the issues

he had continuously raised with Smith and Van Wyk. At the time, Hajela was unaware that he was a target of the investigation, *see id.* ¶ 99, though he was sent a copy of the Special Investigations Policy that contained the rules for such an investigation. *Id.* ¶ 97.[10]

Hajela was interviewed by Reid with regard to five purchase orders created in December 2005. During this meeting, Hajela raised his previous concerns about mismanagement and inaccurate accounting. At this time, Hajela also met with another investigator, Kushner, with whom he raised the same concerns. According to Hajela, the investigators were not interested in his concerns regarding potential SEC violations; all they inquired about was the purchase orders from December 2005.

In June 2006, Hajela informed Van Wyk that he had instituted procedures to investigate and catch violations of GAAP and SEC. Hajela claims that Van Wyk responded by saying, "All I hear from you are complaints." Later that month, Reid and Kushner notified Hajela of their intent to investigate a complaint that he had been using inappropriate language with a subordinate employee. Hajela continued to inform his colleagues of potential mismanagement.

In July 2006, he refused to sign a Management Representation letter because it required him to certify the accuracy of the financial statements/documents. Around this time, Hajela became concerned that "a campaign of retaliation was underway against him." *Id.* ¶ 119. As a result, he

---

9. According to Hajela, the ING website states that there is an internal audit group, Corporate Audit Services, whose role is to support the ING business lines. Am. Compl. ¶ 30. This group is controlled by ING. *Id.* The Corporate Audit Committee is made up of members of the ING Supervisory and Executive Boards. *Id.* ¶ 96. As head of the Special

Investigations Unit, Paul Reid reports directly to the Corporate Audit Committee. *Id.*

10. Hajela argues that pursuant to ING–Employer's policies, employee complaints should be handled by Human Resources rather than the Special Investigations Unit of the Corporate Audit Committee. *Id.* ¶ 112.

was forced to take a medical leave of absence due to anxiety and panic attacks. His attorney wrote to Van Wyk on July 28, 2006, informing him of Hajela's concerns regarding the possibility of retaliation. When he was still on leave, he refused to sign a purchase order that was submitted seven months after the work had begun.

On August 7, 2006, his first scheduled day back at work, Hajela's employment was terminated. He was advised that, because "he disregarded directives from senior management to closely manage expenses by authorizing prepayments to IBM," he was fired. It also stated, among other things, that he structured a transaction to evade authorization procedures and the documentation for the transaction was inaccurate and misleading. *Id.* ¶ 124. Now Hajela claims that his termination occurred in retaliation for his voicing concerns regarding the "mismanagement of Project Apollo and systemic lack of financial controls causing violations of GAAP and SEC rules." *Id.* ¶ 128.

In September 2006, Hajela filed a complaint with the Occupational Safety and Health Administration ("OSHA") alleging that ING and NAIC violated the Corporate and Criminal Fraud Accountability Act of 2002, 18 U.S.C. § 1514A. *Id.* ¶ 134. In August 2007, OSHA completed its investigation and found that ING is an integrated employer along with its subsidiary NAIC. *Id.* ¶ 135.

Hajela filed his action with this court in July 2007. Hajela seeks damages that include loss of wages and benefits, emotional harm, loss of enjoyment to life and damage to reputation. ING Groep moves to dismiss for lack of personal jurisdiction, stating that it is not, nor was it ever, Hajela's employer. Def's. Aff. ¶ 7.

## III. STANDARD OF REVIEW

"When responding to a Rule 12(b)(2) motion to dismiss for lack of per-sonal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi North America, Inc.,* 286 F.3d 81, 84 (2d Cir.2001). However, as the Second Circuit explained in *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.1990),

"the nature of the plaintiff's obligation varies depending on the procedural posture of the litigation. Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith ... legally sufficient allegations of jurisdiction. At the preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations. After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. At that point, the *prima facie* showing must be factually supported."

(internal quotations omitted); *see also Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir.2001)(quoting *Ball* ).

Where, as here, no discovery had taken place at the time the Motion was filed, a plaintiff may establish a *prima facie* basis for personal jurisdiction through his "own affidavits and supporting materials, containing an averment of facts, that if credited would suffice to establish jurisdiction over the defendant." *Whitaker,* 261 F.3d at 208. (internal quotations omitted). When the issue is addressed on affidavits, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993).

■ In deciding whether personal jurisdiction is authorized, the court must first look to the long arm statute of the forum state, in this instance Connecticut. *Whitaker,* 261 F.3d at 208. If the long arm statute reaches the defendant, the court must then decide whether the exercise of jurisdiction comports with the requisites of due process. *Id.*

## IV. DISCUSSION

### A. *Motion to Dismiss*

1. *Jurisdiction Under Connecticut's Long Arm Statute*

Hajela asserts that this court has jurisdiction over ING Groep pursuant to Conn. Gen.Stat. § 33–929(e). Connecticut's long arm statute provides, in pertinent part:

Every foreign corporation which transacts business in this state in violation of section 33–920 shall be subject to suit in this state upon any cause of action arising out of such business.

Conn. Gen.Stat. § 33–929(e).

■ To establish jurisdiction under § 33–929(e), a plaintiff must establish that the defendant corporation transacted business in Connecticut without a valid certificate of authority from the Secretary of State. Conn. Gen.Stat. § 33–920(a). Neither party asserts that ING Groep holds a certificate of authority to transact business in Connecticut.[11] Hajela claims that § 33–929(e) reaches ING Groep because it transacts business in Connecticut. "A cause of action arises out of the transaction of business where the litigation 'bears some connection with the business conducted by the foreign corporation in this state.'" *Aurand v. Contemporary Marketing, Inc.,* 2005 WL 3499995 *3, 2005 U.S. Dist. LEXIS 38428 *9 (D.Conn.2005)(citing *Lombard Bros., Inc. v. General Asset Management Co.,* 190 Conn. 245, 252, 460 A.2d 481 (1983)). Specifically, Hajela claims that "the single, purposeful, transaction out of which this claim arises is Plaintiff's employment agreement directly with ING entered into and performed in the State of Connecticut." Def's. Mem. in Opp. at 27. Hajela suggests that ING Groep did unauthorized business in Connecticut by employing him, paying him, offering him benefits and stock options, and eventually firing him. Thus, because the cause of action arises out of his employment, this court could assert jurisdiction over ING Groep if it employed Hajela.[12]

---

**11.** It bears noting that Hajela later claims that NAIC is authorized to do business in Connecticut, and, because of NAIC's agency relationship with ING Groep as a joint employer, ING Groep is thus subject to personal jurisdiction under § 33–929(a) and § 33–929(e). Pl's Mem. in Opp. at 30. It is not clear to the court what is meant by this. If ING Groep is authorized to do business in Connecticut by way of its relationship with NAIC, then § 33–929(e) could not apply to it. Alternatively, if it is authorized to do business in Connecticut, then § 33–929(a) could apply, but that would make the arguments in his Amended Complaint regarding unauthorized transaction of business moot.

Because neither party explicitly asserts that ING Groep is authorized to do business in Connecticut, the court will analyze the issue under § 33–929(e).

**12.** ING Groep also asserts that mere employment is not enough to be considered "transacting business" under § 33–929(e) and thus jurisdiction is not established. See Def's. Mem. in Support at 7–8. In support of this, ING Groep cites Connecticut cases that allegedly hold that employment is not enough. *See, e.g., Airguard Industries, Inc. v. New England Air Filters,* No. 326415, 1992 WL 369535 (Conn.Super. Dec. 1, 1992)(finding there was no jurisdiction where employee was the only person who worked in Connecticut office and spent less than 10% of his time there). The court does not find these cases persuasive because they all refer to employment situations where the employee spent very minimal time in Connecticut. That is not the case here.

■ ING Groep, argues, however, that Hajela has never been an employee of ING Groep and further, that it had no involvement in his hiring or firing. Def's. Aff. ¶ 7. It also asserts that it does not maintain an office in Connecticut nor does it sell goods or do business in the state. Pl's Mem. in Support at 4. It maintains that Hajela was employed only by NAIC. In support of this, ING Groep attached an Affidavit to its Motion to Dismiss. This Affidavit is signed by two Assistant General Counsels of ING Groep. It specifically states that Hajela was never an employee of ING Groep. ING Groep asserts that NAIC is an indirect subsidiary of ING Groep and therefore had nothing to do with NAIC's decision to employ Hajela in Connecticut. Def's. Mem. in Support at 4.

Conversely, Hajela, in his Opposition, makes many allegations asserting that ING Groep was in fact his employer.[13] He states that he received pay stubs, letterhead, and business cards with the ING logo on it. He also asserts that he was hired and fired by ING. However, the only two supporting documents presented by Hajela are an offer letter and an application for employment. These documents do not contain the name "ING Groep;" instead, they reference "ING." It is Hajela's allegation that "ING" is used to reference ING Groep and all of its subsidiaries.

Because the Motion to Dismiss was filed before discovery, Hajela need only make a *prima facie* showing of personal jurisdiction. Thus, where the "issue is addressed on affidavits", as it is here, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor notwithstanding a controverting presentation by the moving party." *A.I. Trade*, 989 F.2d at 79–80.

■ The allegations made by Hajela are only sufficient if Hajela is correct in his assertion that there is a legal basis for being employed by two employers at once. Hajela claims that he is employed by both ING and NAIC because they are joint employers. "A conclusion that employers are joint assumes that they are separate legal entities, but that they handle certain aspect of their employer-employee relationships jointly." *Arculeo v. On–Site Sales and Marketing, LLC*, 425 F.3d 193, 198 (2d Cir.2005)(citing *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir.1985)).[14] The joint employer theory of liability consists of a four factor test "to determine whether two or more employers can be treated as one for the purposes of assigning liability." *Gulino v. New York State Ed. Dept.*, 460 F.3d 361, 378 (2d Cir.2006). The four factors are "(1) interrelation of operations, (2) centralized control of labor relations, (3) common man-

Hajela worked out of an office in Connecticut four days a week and did all of his work for ING and NAIC in Connecticut. Moreover, other employees of ING and NAIC worked out of the Connecticut office. Thus, because of all of this activity in Connecticut, if Hajela's allegation that ING and NAIC are joint employers is correct, it can certainly be said that ING was "transacting" business in Connecticut.

13. Most of these assertions come from materials and information that Hajela found on the world wide web (the ING website as well as its 2006 SEC filings).

14. It bears noting that the court is unable to find an instance where the Second Circuit has applied the joint employer theory in the exact circumstances of the case at bar (*e.g.*, Sarbanes Oxley and FLMA claims). However, joint employer analysis has been applied in both NLRB and Fair Labor Standards Act cases. *See e.g. Ling Nan Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 72 (2d Cir.2003). Accordingly, the court notes that it engages in this analysis here only for purposes of a motion to dismiss and recognizes that a joint employer theory may not survive a motion for summary judgment after discovery has taken place.

agement, and (4) common ownership or financial control." *Id.*(citing *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240 (2d Cir.1995)(adopting this test in the Title VII context)).[15] Most courts focus their inquiry on the second factor. *Cook,* 69 F.3d at 1241.

The court finds that, at this stage, Hajela has alleged enough facts to make a *prima facie* showing that ING Groep is his joint employer. NAIC is a subsidiary of ING Groep. There is evidence of an interrelation of operations between the two entities. ING uses an integrated email system that includes a worldwide directory of all the employees of ING Groep and its subsidiaries. ING Groep also seemingly controls the operations and structure of all of its subsidiaries through its Executive Board which is responsible for the day to day management of its six business lines. Furthermore, ING Groep clearly has a large hand in employment relations. Not only was Hajela interviewed by members of the Executive Board but employment applications and job postings for NAIC bear the ING logo. Moreover, Hajela received his pay stubs, benefits, management training, and his offer letter from ING[16]. The only document Hajela received identifying NAIC as his employer was his 2006 earnings summary.

With respect to the third factor, Hajela alleges facts that indicate there is common management among the two entities. For example, Thomas McInerney is on the Executive Board, and is listed as the president of NAIC. Finally, it is not clear to the court whether the two entities can be said

to have common ownership or financial control. The fact that Hajela receives his paychecks from ING rather than NAIC does indicate that they share some financial responsibilities. Taking all the alleged facts in a light most favorable to Hajela, the court finds that Hajela has alleged enough to survive the pre-discovery Motion to Dismiss.[17]

### 2. Jurisdiction Under the Due Process Analysis

Having established that the long arm statute supports personal jurisdiction, the court must then address whether jurisdiction over the defendant violates due process. "The due process test for personal jurisdiction has two related components: the 'minimum contact' inquiry and the 'reasonableness' inquiry." *Metropolitan Life Ins. Co. v. Robertson–Ceco–Corp.,* 84 F.3d 560, 567 (2d Cir.1996). To accord with the demands of due process, a non-resident defendant must have "certain minimum contacts" with the forum jurisdiction "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)(internal citations omitted). In addressing this portion of the inquiry courts make a distinction between specific and general jurisdiction. *Metropolitan Life Ins. Co.,* 84 F.3d at 567. Specific jurisdiction exists when the suit arises out of or is related to defendant's contacts with the forum state. *Id.* at 567–8.

---

**15.** Hajela cites *Clinton's Ditch* as the authority for the joint employer analysis. While that case does speak to joint employer theory, *Gulino,* a more recent case from the Second Circuit, states that this four-factor test applies to both joint and single employer theory of liability. 460 F.3d at 378.

**16.** All of the documents referenced were from "ING." They do not specifically say "ING Groep." However, Hajela alleges that ING is an all encompassing term in that it is used to refer to ING Groep and all of its subsidiaries.

**17.** The court notes that it is applying the pre-discovery motion to dismiss standard. The outcome may be different on a full record.

The second part of the inquiry focuses on whether the exercise of jurisdiction is reasonable. *Id.* The crucial question is whether the defendant "purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, such that [the defendant] should reasonably anticipate being haled into court there." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242–43 (2d Cir.2007)(quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). "So long as it creates a substantial connection with the forum state, even a single act can support jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).

ING Groep asserts that, even if Connecticut's long arm statute reached them, exercising personal jurisdiction over it would violate due process. Conversely, Hajela asserts that his "employment agreement directly with ING and performed in the state of Connecticut" amounts to a single purposeful transaction giving rise to jurisdiction. Because the court finds that Hajela made a *prima facie* showing that ING Groep and NAIC are joint employers, it finds that exercising personal jurisdiction over ING Groep does not offend due process in the same way that exercising jurisdiction over NAIC would not offend due process. Under the joint employer allegations, both entities purposefully availed themselves in Connecticut by offering Hajela work in the state, providing him with an office there, and ultimately firing him. Furthermore, other members of management, such as Smith, worked out of Connecticut. Because the claims made by Hajela arise out of both ING's and NAIC's contacts with Connecticut, the minimum contacts requirement is satisfied. Based on these contacts, the court finds that the defendants, at least with respect to its alleged joint employer relationship with NAIC, could reasonably have expected to be haled into a Connecticut court. The court thus denies the Motion to Dismiss.

## B. *Motion to Transfer Venue*

The remaining defendants Smith, Van Wyk and NAIC, move the court to transfer all of Hajela's claims to New York pursuant to 28 U.S.C. § 1404(a) [18], which authorizes transfer when more than one jurisdiction is proper. The party moving for the transfer has the burden of establishing that its choice of venue is more appropriate. *H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.*, 296 F.Supp.2d 234, 241 (D.Conn.2003)(citing *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir.1950)). In considering a motion to transfer, the court can consider several factors including: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir.2006)(citing *Albert Fadem Trust v. Duke Energy Corp.*, 214 F.Supp.2d 341, 343 (S.D.N.Y.2002)). Further, the plaintiff's choice of forum should be given great weight. *Id.*

---

**18.** In their Motion, the defendants also make an argument that transfer is appropriate under 28 U.S.C. § 1406(a). However, because the court has already found that it can exercise jurisdiction over ING Groep, this statute does not apply, thereby making this argument moot.

Smith, Van Wyk, and NAIC request that the matter be transferred because of, among other things, the location of documents, convenience to the parties, and avoidance of duplicative parallel litigation. The court find these arguments unavailing. First, duplicative or bifurcated litigation is not an issue in light of the court's denial of ING Groep's Motion to Dismiss. While the defendants make an argument that transfer would obviate the need for the court to conduct discovery related to the jurisdictional issue, the court finds that the other facts weigh in Hajela's favor and thus, outweigh this argument.[19]

First, the plaintiff's choice of forum should be given great weight. Second, the court has trouble seeing how New York is any more convenient than Connecticut for the parties and the witnesses. In fact, the defendants even state that "litigation of this entire action in New York would pose no *additional* burdens." Mot. to Transfer at 9 (emphasis added). Yet they fail to say how litigation in New York would make it *less* burdensome. Connecticut is also more favorable because most of the operative facts giving rise to this case occurred in the state. Finally, the location of the relevant documents, while virtually a non-issue in today's world because of modern technology, also weighs in favor of Connecticut because it is where the events giving rise to this action took place. In all, the defendants have not convinced the court that New York is a more convenient forum for this matter and denies the Motion to Transfer (Doc. No. 67).

## V. CONCLUSION

For the forgoing reasons, ING Groep's Motion to Dismiss for lack of personal jurisdiction is DENIED (Doc. No. 55). Accordingly, because the court found that

it can exercise jurisdiction over ING Groep, it finds that Hajela's alternative Motion to Transfer (Doc. No. 58) is now moot and is thus DENIED as such. Finally, the defendants' Motion to Transfer (Doc. No. 67) is also DENIED.

**SO ORDERED.**

---

19. The court also notes that discovery is already well underway in this case, thereby rendering this argument practically moot.