**Kathryn ROBB and Dorothy Farrell, Plaintiffs,**

**v.**

**George ROBB, Jr., Defendant.**

**Civil No. 3:08cv695 (JBA).**

United States District Court, D. Connecticut.

Feb. 23, 2009.

Karen K. Clark, Richard J. Kenny, Kenny, O'Keefe & Usseglio, Hartford, CT, Susan K. Smith, Smith & Moore, LLC, Avon, CT, for Plaintiffs.

Rosemarie Paine, Jacobs, Grudberg, Belt, Dow & Katz, P.C., New Haven, CT, for Defendant.

**RULING ON DEFENDANT'S REVISED AND RENEWED MOTION TO DISMISS [Doc. # 22]**

JANET BOND ARTERTON, District Judge.

Plaintiffs Kathryn Robb and Dorothy Farrell bring suit against their brother, Defendant George Robb, Jr., alleging that he sexually abused each of them while they were minor children in the 1960s and 1970s. Mr. Robb has moved to dismiss the action on the grounds that this Court lacks personal jurisdiction over him.

### I. Introduction and Background

Plaintiffs, who are sisters, grew up in New York State with their brother, George Robb, during which time, Plaintiffs allege, Mr. Robb sexually abused each of them. In particular, they allege that Mr. Robb sexually abused Ms. Robb for six years spanning 1968 through 1974, when Ms. Robb was eight through 14 years old, and that he sexually abused Ms. Farrell from 1971 through 1978, when Ms. Farrell was six through 13 years old. (2d Am. Compl. [Doc. # 19] at Count One at ¶¶ 4–6 and Count Two at ¶¶ 4–6.) Later, each Plaintiff moved to Connecticut. Ms. Robb lived in Connecticut between 1983 and 1985 (and now lives in Massachusetts), and Ms. Farrell moved to Connecticut in 1999 and has lived here since. (*Id.* at Count One at ¶ 7 and Count Two at ¶ 7.) Mr. Robb is a resident of New York. (*Id.* at Count One at ¶ 2 and Count Two at ¶ 2.)

Plaintiffs allege that while each of them has always been aware of the Defendant's conduct with them and has never repressed memories of it, each Plaintiff experienced a transformative "realization," while living in Connecticut, that Defendant's actions "were abusive and harmful to her." (*Id.*) Each Plaintiff alleges that "[a]s a result of" Defendant's conduct and her subsequent realization of its harmful nature, she "has suffered," *inter alia,* "shock, extreme emotional distress, sleep disturbance," "recurrent and intrusive recollections of the [D]efendant's sexual abuse," "anger, guilt, anxiety, anxiety attacks," "feelings of vulnerability and mistrust," and "post-traumatic stress disorder," "which conditions require long term psychiatric therapy," and that "some or all of [these conditions] may be permanent in nature." (*Id.* at Count One at ¶ 8 and Count Two at ¶ 8.) [1]

Plaintiffs' suit asserts state-law tort claims of assault and battery (*id.* at Count One (Ms. Robb) and Count Two (Ms. Farrell)), reckless assault and battery (*id.* at Count Three (Ms. Robb) and Count Four (Ms. Farrell)), and intentional infliction of emotional distress (*id.* at Count Five (Ms. Robb) and Count Six (Ms. Farrell)). Defendant removed the case from Connecticut Superior Court (Judicial District of Hartford) on the basis of diversity jurisdiction and now moves to dismiss for lack of personal jurisdiction. At the Court's prefiling conference, one purpose of which was to determine whether Defendant's

forthcoming Motion to Dismiss for lack of personal jurisdiction required jurisdictional discovery (*see* [Doc. # 10] ), Defendant's grounds for dismissal were explained to be directed, in part, to Plaintiffs' legal theory of personal jurisdiction—that is, that the Court lacked personal jurisdiction over him as a matter of law even assuming, *arguendo,* all of Plaintiffs' allegations were true. Thus, it was apparent that no jurisdictional discovery was necessary to assess personal jurisdiction on that basis, and Plaintiffs were offered the opportunity to amend their complaint to include all jurisdictional allegations. It is Plaintiff's Second Amended Complaint [Doc. # 19] which followed to which Defendant's motion to dismiss for lack of personal jurisdiction [Doc. # 22] is directed. For the reasons that follow, the Court grants Defendant's motion to dismiss.

## II. Standards

■ Where, as here, the Court determines personal jurisdiction based only on the pleadings, "rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." *DiStefano v. Carozzi North America, Inc.,* 286 F.3d 81, 84 (2d Cir.2001). The Court must construe all pleadings "in the light most favorable to [the plaintiffs], resolving all doubts in [their] favor." *Id.* [2]

■ In this diversity case, this Court determines the limits of its personal juris-

---

1. The Complaint also includes allegations of harm specific to one or the other Plaintiff. For example, Ms. Robb alleges that she suffers "weight management issues related to over-exercise" as well as "feelings that she lacks ownership over her body" and "feelings of loss and feelings of fear" (2d Am. Compl. at Count One at ¶ 8), and Ms. Farrell alleges that she suffers "flashbacks, nightmares and night terrors" (*id.* at Count Two at ¶ 8). The distinctions between the harms allegedly suf-

fered by each Plaintiff are not, however, material to the Court's disposition of Defendant's Motion to Dismiss.

2. Both Plaintiffs and Defendant attached affidavits and other documents purporting to support or contest Plaintiffs' jurisdictional allegations. Consistent with the understanding reached with the parties at the pre-filing conference, the Court has not relied on these documents and assumes the truth of all of

diction over Defendant by reference to Connecticut's long-arm statute. *See Thomas v. Ashcroft,* 470 F.3d 491, 495 (2d Cir.2006) ("The breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located."); *see also* Fed.R.Civ.P. 4(k)(1).[3] The Connecticut long-arm statute, which the parties agree is pertinent here, provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual ... who in person or through an agent: ... (3) commits a tortious act outside the state causing injury to person or property within the state ... if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state[.]

Conn. Gen.Stat. § 52–59b(a).

## III. Discussion

Defendant argues that his alleged tortious acts—his sexual abuse of Plaintiffs, which occurred in New York[4]—have not "caus[ed] injury ... within the state [of Connecticut]." Defendant argues that "[l]iving in Connecticut years after the alleged assaults occurred simply does not constitute an 'injury' in Connecticut for purposes of" § 52–59b(a)(3), and that Plaintiffs' allegations that they were in Connecticut during their realizations of the harmful nature of Mr. Robb's conduct is irrelevant to the jurisdictional analysis of where the injuries giving rise to Plaintiffs' causes of action occurred. (Def.'s Mem. Supp. 9–13.)

In opposition, Plaintiffs argue that their "injury" occurred at the moment they realized the harmful nature of Mr. Robb's conduct. They argue that "[i]n the case of sexual abuse upon a minor, it is often years after the abuse before the emotional and behavioral injuries are suffered and then linked to the sexual abuse." (Pls.' Obj. Def.'s Mot. Dismiss [Doc. # 25] ("Pls.' Obj.") at 14.) They further argue that "[t]he uniqueness of injuries that result from sexual abuse upon a minor has been recognized by legislatures and courts across the country who, recognizing the delayed onset of injuries following such abuse, have extended the statute of limitations that apply to such claims." (*Id.* at 15.)[5]

---

Plaintiffs' allegations in their Second Amended Complaint.

3. Of course, in addition to meeting the requirements of the state long-arm statute, the Court's exercise of personal jurisdiction must comport with due process. *See, e.g., Hajela v. ING Groep, N.V.,* 582 F.Supp.2d 227, 237–38 (D.Conn.2008) (explaining the "two related components" of "[t]he due process test for personal jurisdiction," namely, minimum contacts and purposeful availment); *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 242–43 (2d Cir.2007) (tracing Supreme Court jurisprudence regarding due process test for personal jurisdiction and development of state long-arm statutes).

4. As Plaintiffs explain, "[t]here is no dispute that the alleged sexual assaults/abuse took place in New York—outside the State of Connecticut." (Pls.' Obj. Def.'s Mot. Dismiss [Doc. # 25] ("Pls.' Obj.") at 11–12.)

5. At oral argument Plaintiffs argued that legislatures' extensions of statutes of limitation for sexual abuse torts indicate that the legislatures recognize that "it's a different animal than the average tort" and that "it's recognized that injury doesn't necessarily occur at the time of the sexual conduct and it is recognized as often occurring years later when there a triggering event or realization."

The Connecticut legislature has three times modified the statute of limitations for sexual abuse of minors. First, in 1986 it permitted causes of action until the later of seven years from the date of the act or when the plaintiff turns 20; in 1991 it allowed plaintiffs to bring

The parties focus their analysis of § 52–59b(a)(3) on case law from New York interpreting that state's analogous long-arm statute, N.Y. C.P.L.R. § 302(a)(3), whose interpretations Connecticut courts find persuasive because the New York provision formed the basis for, and is identical in relevant part to, § 52–59b(a)(3).[6] *See Zartolas v. Nisenfeld*, 440 A.2d 179, 181, 184 Conn. 471, 474 (Conn. 1981) ("We note ... that in enacting § 52–59b, the legislature used New York Civil Practice Law § 302 as a model. We therefore find pertinent the judicial interpretation given to that New York statute.") (citations omitted). " '[C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the original event which caused the injury.' " *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir.2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir.1999)) (internal quotations and citations omitted). Under that statute, "[t]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Id.* (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir.1990) (internal quotations and citations omitted)); *see also Hermann v. Sharon Hospital, Inc.*, 135 A.D.2d 682, 683, 522 N.Y.S.2d 581 (N.Y.App. Div.2d Dep't 1987) (New York court had no personal jurisdiction over Connecticut hospital where New York resident obtained allegedly negligent medical treatment because "[t]he situs of the injury is the location of the original event which caused the injury [i.e., Connecticut], not the location where the resultant damages are subsequently felt by the plaintiff [i.e., New York]"); *Schembri v. Physicians for Women, P.C.*, No. 323672, 1997 WL 282130, *4 (Conn.Super.Ct. May 19, 1997) (applying situs-of-injury test and holding that no jurisdiction lay under § 52–59b(a)(3) over New York doctor in malpractice suit brought by Connecticut resident for treatment occurring in New York).

Plaintiffs conceded at oral argument that the situs-of-injury test is the generally-applicable analysis for § 302(a)(3) and § 52–59b(a)(3), but argue that where the harm alleged is caused by sexual abuse, the "injury" for purposes of the situs-of-injury test must be understood to occur when the victim first experiences a realization of the harmful nature of the sexually abusive conduct. The Court disagrees that any such legal distinction exists and concludes that the situs of Plaintiffs' injuries was New York because Defendant's actions which caused their injuries occurred exclusively in New York, and only the Plaintiffs' realizations

suits until they turned 35 years old; and since 2002, a plaintiff can bring suit until the date she turns 48 years old. *See* § 52–577d (30 years from date of majority); 2002, P.A. 02–138, § 2 (replacing 17 with 30 years from date of majority); *Giordano v. Giordano*, 664 A.2d 1136, 1138–41, 39 Conn.App. 183, 184–191 (Conn.App.Ct.1995) (tracing development of § 52–577d).

However, while the Connecticut legislature has recognized that victims of sexual abuse may take many years to recognize the harm such abuse has caused, this legislative accommodation on *when* suit may be commenced has no effect on *where* it may be brought.

6. Conn. Gen.Stat. § 52–59b(a)(3) tracks the language of N.Y. C.P.L.R. § 302(a)(3) verbatim except for two changes not relevant here: *first*, the Connecticut law applies to "any nonresident individual" rather than "any nondomiciliary;" and *second*, the Connecticut statute introduces the two qualifying sections of subsection (a)(3) (i.e., subsections (A) and (B)) with the phrase "if such person or agent," rather than with the phrase "if he" used in the New York statute.

took place in Connecticut. The Complaint makes clear that Plaintiffs' realizations were triggered by events which were neither tortious nor conduct by Defendant: Ms. Robb watching a movie with family friends (Am. Compl. at Count One at ¶ 7) and Ms. Farrell bathing her six-year-old daughter (*id.* at Count Two at ¶ 7). Thus, the realizations themselves cannot be deemed the independent cause of the injuries Plaintiffs have suffered because the Complaint unmistakably alleges that Defendant's conduct caused their injuries, and equally unmistakably, Defendant's tortious conduct took place in New York. While the events *triggering* Plaintiffs' understanding of their injuries took place in Connecticut, the conduct that actually *caused* their emotional and psychological injuries took place in New York. The fact that Plaintiffs' injuries were not manifested or understood until Plaintiffs were in Connecticut, where they were actuated by benign events unrelated to Defendant's conduct, is insufficient to confer personal jurisdiction over Defendant under § 52–59b(a)(3).

Courts faced with analogous circumstances—where plaintiffs allege tortious conduct occurring outside the state resulting in latent injuries that are discovered when the plaintiffs were within the state— have similarly concluded that out-of-state tortious conduct in such circumstances, without more, does not confer personal jurisdiction over the alleged tortfeasors. In *Diskin v. Starck*, a New York court lacked personal jurisdiction over employees of a Vermont camp who had "sexually assaulted and abused the infant plaintiffs during their stay [at the camp], causing them severe physical and emotional harm," because "the alleged tortious conduct and the infants' injuries occurred in Vermont." 538 F.Supp. 877, 879 (E.D.N.Y.1982). That court explained: "Plaintiffs cannot sustain jurisdiction under § 302(a)(3) merely by showing that as domiciliaries of

this state, they suffered further damage (either economic or physical), on account of the earlier injuries sustained outside the state." *Id.* Similarly, in *Swindell v. Florida East Coast Railway Co.*, no personal jurisdiction lay over the Florida railroad company for whom the plaintiff, a New York resident, had worked in Florida, where "his work caused him to be exposed to asbestos and other toxic substances, causing him permanent physical and emotional injury," but "the extent of these injuries was not discovered until" many years later, when he lived in New York and "developed emotional distress as a result of this tortious conduct." 42 F.Supp.2d 320, 322 & 325 (S.D.N.Y.1999). Rejecting the plaintiff's argument that his injuries occurred in New York, the court held that the "[p]laintiff's complaint clearly alleges that his exposure to dangerous materials in Florida caused him emotional distress. His alleged injury therefore occurred in Florida and not New York, just as the Vietnam veteran suffering Post–Traumatic Stress Disorder was injured in Vietnam, not in the American city to which he returned." *Id.* at 325. The *Swindell* court explained further that the "plaintiff's argument *must* fail because it would allow any injured party claiming emotional distress to move to any state in the country, and then claim that their injury was sustained in that state. This would abrogate the long-established rule that 'an injury does not occur in New York simply because the plaintiff is domiciled ... there.' " *Id.* at 325–26 (quoting *Dogan v. Harbert Const. Corp.*, 507 F.Supp. 254, 262 (S.D.N.Y.1980)) (ellipses in *Swindell*, emphasis added).

Here, Plaintiffs have suffered severe psychological and emotional injuries as a result of physical conduct that they were aware took place in New York. That they were in Connecticut when the psychological devastation caused by Defendant's con-

duct manifested itself does not transport the location of their injury from New York to Connecticut. Even though victims of sexual abuse often sublimate or repress memories of being sexually abused, or their cognizance of the significance of such abuse, and recollect the physical abuse or suffer the harmful psychological impact of it years afterward, the reality that these memories or realizations surface or come to the victim's consciousness for any number of reasons, or for no reason at all, does not expand the Court's authority to exercise personal jurisdiction over the sexual abuser under § 52–59b(a)(3). Even here, where the long-past conduct causes substantial and permanent harm to victims through complex and sometimes attenuated mechanisms, the place of the victim's suffering is not, for purposes of § 52–59b(a)(3), the "situs" of the injury, which Plaintiffs were aware took place in New York. Accordingly, this Court has no personal jurisdiction over Mr. Robb under § 52–59b(a)(3), and Defendant's motion to dismiss will be granted.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss [Doc. # 22] is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.