470 F.3d 491
 Rodney THOMAS, Plaintiff-Appellant,
v.
John ASHCROFT, Kathleen Hawk Sawyer, Asa Hutchinson, Mark Glover, Jane/John Does, Gregory Parks, Ulises Vargas, Scott Seeley-Hacker, John Sieder, John Ryan, Brad Clemmer, Greg Conners, Tom Cielecy, Richard Jones, Steven Woodland, Federal Bureau of Prisons, Metropolitan Correctional Center, and Metropolitan Detention Center, Defendants-Appellees.
 Docket No. 04-4001-pr.
 United States Court of Appeals, Second Circuit.
 Argued: May 23, 2006.
 Decided: November 28, 2006.
 
 Jon Romberg, Kathryn Diehm, Adam Wells, Seton Hall University School of Law, Center for Social Justice; Newark, NJ, for Plaintiff-Appellant Rodney Thomas.
 Richard E. Rosberger, Assistant United States Attorney for the Southern District of New York; New York, NY, for Appellees Mark Glover, Gregory Parks, Ulises Vargas, Scott Seeley-Hacker, John Sieder, John Ryan, Brad Clemmer, Greg Conners, Tom Cielecy, Richard Jones, and Steven Woodland.
 Before JACOBS, Chief Judge, B.D. PARKER, Circuit Judge, and PRESKA, District Judge.*
 B.D. PARKER, JR., Circuit Judge.
 
 
 1
 Rodney Thomas appeals from a judgment of the United States District Court for the Southern District of New York (Motley, J.) dismissing, pursuant to Fed. R. Civ. Pro. 12(b)(1), (b)(2), and (b)(6), his complaint alleging that certain named and unnamed defendants violated his constitutional rights by depriving him of medical treatment for his pre-existing glaucoma condition. See Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Specifically, Thomas seeks review of the district court's dismissal of his claims against certain DEA agents for lack of personal jurisdiction and dismissal of his claims against certain prison officials for failure to allege their personal involvement in the denial of treatment.[1] We conclude that the district court properly dismissed the claims against the DEA agents, but erred in dismissing Thomas's claims against the prison officials.
 
 I. BACKGROUND
 
 2
 Except as noted, the facts are taken from the complaint. In September 2001, Thomas was arrested on drug charges by DEA agents in California. Thomas contends that at the time of his arrest, he told the DEA agents that he suffered from glaucoma, which, if untreated, would lead to blindness, and he therefore kept with him at all times eye drop prescriptions that he was required to self-administer daily. Thomas alleges that the DEA agents confiscated and discarded his medications and he was not provided with replacements for several weeks.
 
 
 3
 Thomas was transferred to the New York Metropolitan Correctional Center ("MCC") in October 2001. He alleges that during the two-week trip from California to New York, his eye medication was rarely provided and improperly administered. At Thomas's initial court appearance in New York, in the presence of defendants Gregory Parks, the MCC Warden, and Dr. Mark Glover, the MCC Clinical Director, Thomas's attorney reported that Thomas was not receiving his glaucoma medication, and the presiding Magistrate Judge issued an order directing that Thomas receive the required medical attention.
 
 
 4
 Two weeks later, Thomas visited the New York Eye and Ear Clinic ("Eye Clinic"). Doctors at the Eye Clinic allegedly sent notes to the MCC, directing that Thomas's glaucoma medication be administered daily, in compliance with the prescribed regimen. In January 2002, after discovering that Thomas was still not receiving his medication, Dr. Daniel Will of the Eye Clinic wrote to the MCC that Thomas "did not receive meds at facility today" and is "high risk for blindness w/no meds."[2] (Compl. ¶ 39.) At this point, although his vision had been severely compromised, Thomas claims he could still perceive some items in his visual field.
 
 
 5
 Despite complaints to his doctors and the MCC's staff, Thomas's eye medication continued to be administered erratically. During a subsequent appointment at the Eye Clinic, Thomas contends that a corrections officer confirmed to a physician that Thomas had not been provided with his medications at MCC, and Thomas's doctors again notified the MCC that his medications must be properly administered.
 
 
 6
 In May 2002, Thomas was transferred from the MCC to the Metropolitan Detention Center ("MDC") in Brooklyn. Upon arrival, Thomas was placed in the MDC's psychiatric facility for no apparent reason. Thomas further contends that he was not administered his glaucoma medication while at the MDC. Thomas alleges that while at the MDC, he did not receive his glaucoma medication and "was handed by staff for self-administration, empty eye drop bottles." (Compl.¶ 48.) Thomas alleges that his request for medical attention was denied even after he experienced "a popping sensation in his right eye," followed by constant watering and pain of increasing severity. (Compl. ¶ 49.)
 
 
 7
 After two weeks at MDC, Thomas was returned to MCC. Despite numerous complaints from his attorney and family, a court order, and warnings from medical specialists, Thomas continued to be denied access to his glaucoma medication. While incarcerated, Thomas became permanently blind.
 
 
 8
 In July 2002, Thomas commenced the present action against a number of governmental officials and employees, including the DEA agents who had arrested him in California and those responsible for his medical care at the MCC and the MDC. Thomas asserted a number of federal and state claims essentially alleging that his blindness was caused by the defendants' deliberate indifference to his medical needs while in federal custody, in violation of his "due process rights under the Fifth, Eighth, and Fourteenth Amendments." (Compl.59-61.)
 
 
 9
 The defendants moved to dismiss Thomas's complaint for lack of personal and subject matter jurisdiction and for failure to state a claim, or, in the alternative, for summary judgment. The district court dismissed the complaint as to the DEA agents for lack of personal jurisdiction on the grounds that (1) none of the DEA agents were residents of New York, and, (2) even if the court interpreted the complaint as seeking to base jurisdiction on the "transacting business" prong of New York's long arm statute, C.P.L.R. § 302(a)(1), the "claims against these defendants arise from acts alleged to have occurred at the time of [Thomas]'s arrest, which took place in California," not New York.[3] The court also dismissed the Bivens claims against Gregory Parks (former Warden of the MCC), Mark Glover (former Clinical Director of the MCC), and Ulises Vargas (former Health Services Administrator of the MDC), because Thomas's claims against them were "unsupported by factual allegation of personal involvement in wrongdoing" and were "conclusory."[4] This appeal followed.
 
 II. DISCUSSION
 
 10
 We review de novo the grant of a motion to dismiss under Rule 12(b), accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor. See Kirch v. Liberty Media Corp., 449 F.3d 388 (2d Cir.2006). A complaint should not be dismissed on the pleadings unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir.2005).
 
 
 11
 A. Personal Jurisdiction Over the DEA Agents
 
 
 12
 The district court concluded that Thomas "failed to sustain his burden of showing that the court has personal jurisdiction over the eight named DEA agents" who participated in arresting Thomas in California.[5] We agree.
 
 
 13
 The breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located. See Henderson v. INS, 157 F.3d 106, 123 (2d Cir.1998). In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists. Thomas contends that jurisdiction over the DEA agents exists under the New York long arm statute, which provides that personal jurisdiction may be asserted over any non-domiciliary if, "in person or through an agent" he "transacts any business within the state" or "commits a tortious act within the state," as long as the particular cause of action asserted is one "arising from" any of those acts.[6] N.Y. C.P.L.R. § 302(a)(1), (2) (McKinney's 2006).
 
 
 14
 On appeal, Thomas argues that jurisdiction is proper under New York's long-arm statute because the DEA agents were domiciled in New York and transacted business in New York. Specifically, Thomas alleges that the DEA agents were "New York-based" and had engaged in three transactions in New York that make jurisdiction proper: (1) obtaining authorization to wiretap Thomas's phone in New York, (2) investigating purported criminal activity in New York, and (3) filing a criminal complaint against Thomas in New York.
 
 
 15
 We disagree. At least six of the agents were residents of California and assigned to the Los Angeles Field Division during all relevant periods, and the one agent who had worked with the DEA's New York Field Division was a resident of New Jersey. Affidavits submitted in support of defendants' motion to dismiss show that the individual DEA agents were not domiciled in New York. Even if the court interpreted the complaint as seeking to obtain jurisdiction under the "transacting business" prong of New York's long-arm statute—based on Thomas's allegations that the criminal investigation took place in New York and the criminal complaint was filed in New York—Thomas failed to show that his cause of action arose from such transactions. As the district court explained, the "claims against these defendants arise from acts alleged to have occurred at the time of [Thomas]'s arrest, which took place in California, and not from any transaction of business within New York." In other words, there is no substantial relationship between the DEA agents' alleged confiscation of Thomas's eye drops in California and any transaction in New York. Cf. Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). Accordingly, we conclude that the district court properly dismissed Thomas's claims against the DEA agents for failure to make a prima facie case of personal jurisdiction over the agents.
 
 
 16
 B. Personal Involvement of the Prison Supervisors
 
 
 17
 With respect to Thomas's Bivens claims against the prison officials, he alleges that although defendants Parks, Glover, and Vargas were alerted to his urgent need for proper medical attention by the court and his doctors, they failed to rectify the situation and, as a result, his vision was "seriously and permanently compromised." (Compl. ¶¶ 20-42.)
 
 
 18
 A plaintiff bringing a claim under Bivens must allege that he has been deprived of a constitutional right by a federal agent acting under color of federal authority.[7] See Bivens, 403 U.S. at 389, 91 S.Ct. 1999. Because the doctrine of respondeat superior does not apply in Bivens actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation. See Ellis v. Blum, 643 F.2d 68, 85 (2d Cir.1981) (stating that respondeat superior generally does not apply in Bivens-type actions); see also Black v. United States, 534 F.2d 524, 527-28 (2d Cir.1976) (concluding that Bivens claims, like suits under § 1983, must allege direct and personal responsibility for the unlawful conduct of subordinates). The personal involvement of a supervisory defendant may be shown by evidence that the defendant: (1) directly participated in the constitutional violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the violation; or (5) failed to act on information indicating that unconstitutional acts were occurring. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994) (citations omitted).
 
 
 19
 Thomas properly alleged that Parks, Glover, and Vargas were acting under color of federal law, within the scope of their positions as federal prison officials. (Compl. ¶ 61.) The district court dismissed the Bivens action against the prison supervisors on the ground that Thomas's claims were "conclusory" and "unsupported by factual allegations of personal involvement [of the prison officials] in wrongdoing." The court reasoned that the one "possible allegation of personal involvement" on the part of prison officials—namely, that the officials had "directed and/or acquiesced in" Thomas's transfer from MDC to MCC—was inadequate to support a Bivens action.
 
 
 20
 The district court's conclusions do not comport with our reading of the complaint. The complaint alleges that the prison officials were on notice of Thomas's medical needs and were aware of the improper administration of his medications, yet failed to address the situation. (Compl.¶ 44.) In addition, the complaint alleges a constitutional violation as a result of Thomas's transfer to the MDC, where he received no medication despite the requests of his family, his lawyer, and outside physicians. (Compl.¶ 48.) Because Thomas alleges that Parks, Glover, and/or Vargas (or other prison officials who may become known during discovery) knew of his urgent medical needs but ignored them, and nevertheless ordered or acquiesced in his transfer to a facility where he received no medication, we conclude that Thomas has alleged sufficient personal involvement to sustain a Bivens action.[8] See McKenna v. Wright, 386 F.3d 432, 436-37 (2d Cir.2004). Finally, where, as here, prison officials were personally instructed by a federal judicial officer to see to an inmate's urgent medical needs, by that fact alone they are personally involved.
 
 III. CONCLUSION
 
 21
 For the foregoing reasons, we AFFIRM the district court's finding of no personal jurisdiction over the DEA agents and dismissal of claims against the DEA agents. We REVERSE the district court's dismissal of claims under Bivens against the three supervisory defendants—Parks, Glover, and Vargas—and REMAND for further proceedings consistent with this opinion.[9] Any pending motions are hereby DENIED.
 
 
 
 Notes:
 
 
 *
 The Honorable Loretta A. Preska of the United States for the Southern District of New York, sitting by designation
 
 
 [1]
 The district court also dismissed, without prejudice, Thomas's claims under the Federal Tort Claims Act ("FTCA") for failure to exhaust his administrative remediesSee 28 U.S.C. § 2679(a)(b). Thomas has submitted a claim under the FTCA to the Northeast Regional Office of the Bureau of Prisons.
 
 
 [2]
 In addition to being deprived of his glaucoma medication, Thomas alleges that he suffered other forms of medical neglect. For instance, the complaint states that the prison staff "has been directed by physicians to make certain that [] Thomas['s] eye patch is changed every other day, yet he has been forced to wear the same eye patch for up to 10 days and longer." (Compl. ¶ 54.)
 
 
 [3]
 In a footnote, the district court appears mistakenly to state that theBivens claims against the DEA agents must also be dismissed for lack of subject matter jurisdiction. We believe the district court intended to dismiss the common law tort claims against the DEA agents because of failure to exhaust under the FTCA. The district court also dismissed the common law tort claims against Parks, Vargas, and Glover, without prejudice, for lack of subject matter jurisdiction.
 
 
 [4]
 Thomas is not pursuing his claims against Ashcroft, Sawyer, and Hutchinson on appeal
 
 
 [5]
 In March 2005, Thomas's motion forin forma pauperis status and appointment of counsel on appeal was granted as to the issues of personal jurisdiction over the named DEA agents and exhaustion of the FTCA claims against the DEA agents and denied as to all other issues on the grounds that those issues were frivolous. (March 4, 2005 Order). Having now had the benefit of full briefing and argument, we believe that Thomas's appeal also has "likely merit" with respect to his Bivens claim against certain prison officials, and we now grant in forma pauperis status and appointment of counsel as to that issue. Cf. Machadio v. Apfel, 276 F.3d 103 (stating that courts must "continually assess whether counsel should be appointed because the need for the appointment of counsel may not have become apparent at the time of the initial denial of the motion").
 
 
 [6]
 N.Y. C.P.L.R. § 302(a) provides that personal jurisdiction may be asserted over a non-domiciliary who
 
 
 [1]
 transacts any business within the state or contracts anywhere to supply goods or services in the state; or
 
 
 [2]
 commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
 
 
 [3]
 commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
 (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
 (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
 
 
 [4]
 owns, uses or possesses any real property situated within the state
 N.Y. C.P.L.R. § 302(a) (McKinney's 2006).
 
 
 [7]
 We recognize that Thomas must only satisfy the liberal pleading requirements of Fed. R.Civ.P. 8(a)See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").
 
 
 [8]
 It is unclear whether Thomas has exhausted his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997(a)See Porter v. Nussle, 534 U.S. 516, 523-24, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (discussing the exhaustion requirements). On remand, the court below should carefully consider whether "special circumstances," such as blindness, render justifiable any failure by Thomas to pursue or exhaust administrative remedies. See Giano v. Goord, 380 F.3d 670, 678 (2d Cir.2004) (holding that prisoner justifiably failed to exhaust administrative remedies).
 
 
 [9]
 When the mandate issues, we relieve Thomas's appellate counsel, the Seton Hall University School of Law's Center for Social Justice Clinic, with the thanks of the Court for their service on this appeal. This Court will appoint trial counsel unless Thomas instructs the Clerk of the Court to the contrary within five days of the issuance of the mandate