HECKLERCO, LLC, et al., Plaintiffs,

v.

YUUZOO CORPORATION LTD.,
et al., Defendants.

15–CV–5779 (VM)

United States District Court,
S.D. New York.

Signed May 11, 2017

Kenneth Sussmane, McCue Sussmane & Zapfel, P.C., New York, NY, for Plaintiffs.

Toby S. Soli, Greenberg Traurig, LLP, Daniel Seth Weinberger, Gibbons P.C., Edward William Larkin, New York, NY, Marc Alan Pergament, Weinberg, Kaley, Gross & Pergament, LLP, Garden City, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge:

Plaintiffs Hecklerco LLC ("Hecklerco"), James Heckler and Andrew Heckler (collectively, "Plaintiffs") brought this action against defendants Wells Fargo Advisors, LLC ("Wells Fargo"), John Hoekman ("Hoekman"), YuuZoo Corporation Limited ("YuuZoo"), YuuZoo Corporation, Thomas Zilliacus ("Zilliacus"), Yuuu Pty Ltd. ("Yuuu"), YZ International, Inc. ("YZ"), Ronald Creevey ("Creevey"), Danielle Creevey, Marc Cramer–Roberts ("Cramer–Roberts"), Moment Media Pty Ltd (Australia), and Moment Media Pty Ltd (UK).[1] The First Amended Complaint("FAC")asserts causes of action for federal securities fraud, common law fraud, negligent misrepresentation and breach of contract.[2] (Dkt. No. 76.) Plaintiffs' claims arise out of their purchase of shares of YuuZoo and a loan by Hecklerco

to defendant Yuuu secured by shares of YuuZoo.

By letter dated December 16, 2016, the YuuZoo Defendants seek leave to file a motion to dismiss all claims against them for lack of personal jurisdiction. ("Motion," Dkt. No. 146.) The Court now construes the YuuZoo Defendants' correspondence as a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons stated below, the YuuZoo Defendants' Motion is denied.

## I. BACKGROUND

### A. FACTUAL ALLEGATIONS [3]

The FAC alleges that the WF Defendants, acting as agents for the Yuuu Defendants and the YuuZoo Defendants, undertook the following acts in New York:

1. June 2013: Solicited and advised Hecklerco to purchase 80,000 shares in YuuZoo for $100,000.

2. July 2013: Solicited and advised Andrew Heckler to purchase 80,000 shares of YuuZoo for $100,000.

3. November 2013: Solicited and advised Hecklerco to purchase an additional 50,000 YuuZoo shares and make a $245,000 loan to Yuuu secured by YuuZoo shares.

On November 19, 2013, Hecklerco entered into agreements with Yuuu and Ronald Creevey pursuant to which Hecklerco loaned $245,000 to Yuuu (the "Loan") and purchased an additional 50,000 YuuZoo shares. The Loan required repayment on

---

1. Wells Fargo and Hoekman are collectively referred to as the "WF Defendants." YuuZoo, YuuZoo Corporation and Zilliacus are collectively referred to as the "YuuZoo Defendants." Yuuu, YZ, Creevey, Danielle Creevey, Cramer–Roberts, Moment–Media Pty Ltd (Australia) and Moment Media Pty Ltd (UK) are collectively referred to as the "Yuuu Defendants."

2. Plaintiffs are also asserting a claim for breach of fiduciary duty in connection with financial advisory services performed by the WF Defendants.

3. Unless otherwise noted, these facts are taken from the FAC. (Dkt. No. 76.)

the earlier of March 15, 2014 or seven days after an initial public offering of YuuZoo on the Singapore Stock Exchange ("SGX"). Creevey traveled to New York to negotiate the November 2013 Loan and share purchase.

The FAC alleges not only that Yuuu and Creevey failed to honor their obligations, but that Creevey and the WF Defendants, acting as agents for Yuuu and YuuZoo, made material misrepresentations in connection with these transactions, and that YuuZoo and Zilliacus made additional misrepresentations in connection with YuuZoo's reverse merger with YuuZoo Corporation and related listing on SGX.

The causes of action against the YuuZoo Defendants are based on the allegation that Creevey and Hoekman acted as agents for the other Defendants. The FAC alleges that the Yuuu Defendants and YuuZoo Defendants transacted business in New York in connection with the above transactions in the following three ways:

1. "[B]y using their agents, the WF Defendants[,] to sell their Yuuzoo shares from the WF New York office to numerous US and New York residents, including Plaintiffs." (FAC ¶ 44.)

2. When the WF Defendants in New York, "as agents for the Yuuzoo Defendants[,] made material false statements of fact and failed to disclose materials facts to Plaintiffs to induce Plaintiffs to purchase Yuuzoo Shares ... and make the Loan ...."(FAC ¶ 45.)

3. "[W]hen their agent [Ronald] Creevey traveled to New York in November 2013 to borrower [sic.] money from a New York lender (Hecklerco) and sell shares to a New York resident (Hecklerco) for the benefit of the Yuuu Defendants and Yuuzoo Defendants." (FAC ¶ 47.)

By memo endorsement dated May 13, 2016, the Court directed the parties to set a schedule for jurisdictional discovery regarding whether an agency relationship existed between YuuZoo and the WF Defendants. (See Dkt. No. 87.) On November 30, 2016, pursuant to a directive from Magistrate Judge Freeman, Plaintiffs provided the YuuZoo Defendants with a ten-page letter outlining proof of Plaintiffs' allegation that the Court has jurisdiction over the YuuZoo Defendants. (See Motion at Ex. F.)

By letter dated December 8, 2016, the YuuZoo Defendants informed the Court that, after reviewing Plaintiffs' offer of proof, it intends to move to dismiss the FAC on jurisdictional grounds. (Dkt. No. 132.) The Court's endorsement instructed the parties to submit letter briefs on the issue. (See id.)

## B. THE YUUZOO DEFENDANTS' PROPOSED MOTION TO DISMISS

By letter dated December 16, 2016, YuuZoo set forth the bases for its contemplated motion to dismiss. (See Motion.) YuuZoo argues that its only connection to the transaction at issue stems from defendant Ronald Creevey's decision, following his resignation from YuuZoo in August 2012, to raise funds for his new business venture by selling his shares in YuuZoo to Plaintiffs and using YuuZoo shares as collateral for the Loan. The YuuZoo Defendants point to affidavits in which defendants Creevey, Cramer–Roberts and Hoekman affirm that YuuZoo had no involvement in the transactions at issue and that no agency relationship existed between them and YuuZoo. (See Motion at 1; id., Exs. B–D.)

The YuuZoo Defendants also argue that nothing produced in jurisdictional discovery establishes that the YuuZoo Defendants knew about, authorized or exercised control over any aspect of Plaintiffs' trans-

actions with Yuuu, creevey and the WF Defendants. Specifically, the YuuZoo Defendants argue that (1) although Hoekman previously solicited capital for YuuZoo in 2007 and 2008, that earlier solicitation has no bearing on whether he was an agent for YuuZoo in 2013; (2) there is no evidence of Plaintiffs' statement that Zilliacus received a portion of the proceeds of transactions with Plaintiffs; (3) the evidence relating to a New York entity that Plaintiffs allege was used to sell YuuZoo stock in New York merely refers to the entity being formed and does not identify any control persons or refer to any stock transactions; (4) any statements regarding YuuZoo's valuation were to existing shareholders and related to a reverse takeover transaction, not to solicit new investors, and therefore cannot give rise to jurisdiction in New York; and (5) there is no evidence that YuuZoo's general counsel made any misstatements to the plaintiffs.

Lastly, the YuuZoo Defendants argue that the three YuuZoo subsidiaries that Plaintiffs claim to have discovered either have no relationship to YuuZoo, or were incorporated after the Complaint was filed and therefore cannot give rise to jurisdiction.

By letter dated December 27, 2016, Plaintiffs opposed the YuuZoo Defendants' Motion and set forth its argument for asserting personal jurisdiction over the Yuu-Zoo Defendants. ("December 27 Letter," Dkt. No. 145.) As an initial matter, Plaintiffs argue that the YuuZoo Defendants are subject to general jurisdiction in New York. Plaintiffs contend that YuuZoo's balance sheet lists YuuZoo America, which is headquartered in New York, as a subsidiary and also lists a loan to that entity. On that basis, Plaintiffs intend to move for leave to file a second amended complaint containing these allegations and asserting general jurisdiction based on systematic and continuous contacts with New York.

Plaintiffs also argue that the YuuZoo Defendants are subject to specific jurisdiction. First, Plaintiffs point to several pieces of evidence that they claim supports their contention that YZ was formed for purposes of acting as YuuZoo's and the other Defendants' agent in engaging in fraudulent sales of YuuZoo shares. Plaintiffs identify several transactions between YuuZoo and YZ, including YuuZoo selling its shares through YZ and Yuuu borrowing money secured by YuuZoo shares and YuuZoo repaying the loan by transferring YuuZoo shares to the lender, that it argues show that YZ, Yuuu and YuuZoo are affiliated entities. At the very least, Plaintiffs argue, YuuZoo's stated policy of only dealing with creditworthy companies should have required it to evaluate YZ, which in turn would have uncovered that YZ was a dummy corporation used only to sell YuuZoo shares for Defendants. Plaintiffs also allege that a New York company, Stonehenge Holding LLC ("Stonehenge"), a shareholder of which is YuuZoo director Anthony Williams, was used to sell Yuu-Zoo shares and promissory notes in New York. Stonehenge was paid commissions on the stock sales from the YZ bank account and was paid directly for the sale of promissory notes. Fifteen percent of those payments were paid to Zilliacus and another YuuZoo director. Lastly, Plaintiffs note that YuuZoo lists YZ as its agent in the United States even though YZ is dissolved and has no offices.

Second, Plaintiffs argue that the affidavits submitted by Defendants should be disregarded because (1) they are self-serving; (2) Creevey has defaulted in this action and Plaintiffs have been unable to locate Cramer–Roberts; (3) Hoekman was permanently barred from the securities industry by FINRA for failure to respond to requests for information about the claims in this action; (4) they ignore the role of YZ and Stonehenge in selling

YuuZoo shares, and (5) they fail to identify whose YuuZoo shares were sold to Plaintiffs or who received the proceeds from Plaintiffs' share purchase and Loan to Yuuu.

Third, Plaintiffs point to numerous documents showing connections between Hoekman and YuuZoo that they claim prove that Hoekman was a long-standing agent of YuuZoo in New York. Plaintiffs further argue that Defendants have not addressed the allegations in the FAC that Creevey acted as Defendants' agent when he traveled to New York to negotiate the share sale and loan with Plaintiffs.

By letter dated January 6, 2017, the YuuZoo Defendants requested leave to respond to Plaintiffs' allegations regarding YuuZoo America. ("January 6 Letter," Dkt. No. 140.) The YuuZoo Defendants deny that YuuZoo America was ever a subsidiary but indicate that even if it were, that is insufficient as a basis to assert general jurisdiction over the parent company under Daimler AG v. Bauman, which held that the relevant inquiry for purposes of general jurisdiction is "whether the foreign corporation's 'affiliations with the State are so "continuous and systematic" as to render it essentially at home in the forum State.'" —— U.S. ——, 134 S.Ct. 746, 761, 187 L.Ed.2d 624 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011)) (alterations omitted).

On March 2, 2017, the Court denied the YuuZoo Defendants' request for leave to respond and ordered Plaintiffs to file a declaration attaching the documents cited in its December 27 Letter in favor of asserting personal jurisdiction over the YuuZoo Defendants. ("March 2 Order," Dkt. No. 141.) Plaintiffs complied with the March 2 Order by filing a declaration by its counsel, Kenneth Sussmane, dated March 20, 2017, which attached twenty-three exhibits. ("Sussmane Declaration," Dkt. No. 14 7.) [4]

## II. DISCUSSION

██ "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006).

[W]here the parties have conducted extensive discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held—the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.

Metro. Life Ins. Co. v. Robertson–Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996) (internal alterations and quotation marks omitted). "The pleadings, documents, and other evidentiary materials must be construed in the light most favorable to plaintiff and all doubts are resolved in its favor." First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F.Supp.2d 369, 389 (S.D.N.Y. 2002).

---

4. Unless otherwise stated, citations herein to "Ex." refer to the exhibits to the Sussmane Declaration. By letter dated March 23, 2017, the YuuZoo Defendants requested that the Court not consider any allegations or arguments that, the YuuZoo Defendants argue, are improperly included in the Sussmane Declaration. ("March 23 Letter," Dkt. No. 148.) By letter dated March 24, 2017, Plaintiffs responded, arguing that the Sussmane Declaration contained no improper argument. ("March 24 Letter," Dkt. No. 142.) The Sussmane Declaration does contain, in addition to descriptions of the exhibits, some argument that was not contemplated by the March 2 Order, and the Court will disregard such argument for purposes of this Motion.

■ "District courts deciding a motion to dismiss for lack of personal jurisdiction must engage in a two-part analysis." Elsevier, Inc. v. Grossman, 77 F.Supp.3d 331, 341 (S.D.N.Y. 2015). "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." Metro. Life, 84 F.3d at 567.

■ "International Shoe distinguished between two exercises of personal jurisdiction: general jurisdiction and specific jurisdiction." Waldman v. Palestine Liberation Org., 835 F.3d 317, 331 (2d Cir. 2016). "Specific personal jurisdiction exists when a forum exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673–74 (2d Cir. 2013) (internal alterations and quotation marks omitted). "Under New York law, a court may exercise general jurisdiction over a defendant under N.Y. C.P.L.R. § 301 or specific jurisdiction under New York's long arm statute, N.Y. C.P.L.R. § 302. "Khankhanian v. Khanian, No. 16 CIV. 8396, 2017 WL 1314124, at *2 (S.D.N.Y. Apr. 6, 2017).

A. GENERAL JURISDICTION

■ Plaintiffs first argue that the presence of YuuZoo subsidiaries in the United States confers general personal jurisdiction over the YuuZoo Defendants. Plaintiffs rely on (1) a balance sheet of YuuZoo that shows loans to entities named "Yuuzoo America" and "Yuuzoo America Exchange" listed as assets under the category "Loan—Subsidiary Co," and (2) a letter from "YuuZoo Corporation BVI" to Saw Meng Tee & Partners PAC, a Singapore-based accounting firm, that lists "Amount due from related companies—Yuuzoo America" in the amount of $1,177,723.45. (Exs. A, B.) Plaintiffs also argue that the YuuZoo Defendants have refused to produce documents regarding these and other alleged subsidiaries of YuuZoo that Plaintiffs believe were based in New York. (See Motion at Ex. I.)

■ The relevant inquiry in determining whether the Court has general jurisdiction over a corporation is "whether that corporation's affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." Daimler AG, 134 S.Ct. at 761. "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" Id. at 760 (citation omitted) (alteration in original). "[W]hen a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case'" in which general jurisdiction may be asserted. Brown v. Lockheed Martin Corp., 814 F.3d 619, 629 (2d Cir. 2016).

Under Daimler, Plaintiffs' assertion that the Court has general jurisdiction over the YuuZoo Defendants is meritless. The FAC is clear that YuuZoo is incorporated in Bermuda and has its principal place of business in Singapore. Although YuuZoo may have subsidiaries in New York, that does not "render it essentially at home" here. Daimler, 134 S.Ct. at 761. Consequently, YuuZoo is not subject to this Court's general jurisdiction.

## B. SPECIFIC JURISDICTION

█ Plaintiffs also argue that the Court has specific jurisdiction over the YuuZoo Defendants because they engaged in a scheme to sell shares in New York through a U.S. entity, YZ, using agents that are domiciled in New York. (See December 27 Letter at 2.)

█ Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state" when the cause of action arises from those transactions. N.Y. C.P.L.R. Section 302(a)(1). Thus, "[t]o establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168 (2d Cir. 2013).

█ The Court must also determine that the exercise of jurisdiction is consistent with due process. See id. at 168. "To establish specific jurisdiction, the plaintiff must also show that the defendant 'purposely availed' himself of the privilege of doing business in the forum state and that the defendant could foresee being 'haled into court' there." Alki Partners, L.P. v. Vatas Holding GmbH, 769 F.Supp.2d 478, 488 (S.D.N.Y. 2011) (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980))' aff'd sub nom. Alki Partners, L.P. v. Windhorst, 472 Fed.Appx. 7 (2d Cir. 2012). "The limits imposed on state jurisdiction by the Due Process Clause, in its role as a guarantor against inconvenient litigation, have been substantially relaxed over the years." World–Wide Volkswagen, 444 U.S. at 292, 100 S.Ct. 559. "Although an exercise of personal jurisdiction must comport with due process, where personal jurisdiction is appropriate under section 302(a), the requirements of due process are met." GEM Advisors, Inc. v. Corporacion Sidenor, S.A., 667 F.Supp.2d 308, 321 (S.D.N.Y. 2009).

In communicating with Plaintiffs regarding their purchase of stock in YuuZoo, Hoekman informed Plaintiffs that he "agreed to help facilitate the share transfer to maintain confidentiality between buyer and seller" and copied "Mark Cramer Roberts (who ... owns the franchise rights for YuuZoo America, UK, Australia, Brazil, Canada, among others) whose corporate account at HSBC will hold funds while shares are being issued." (Ex. E at PL 95.) The account was in YZ's name and lists a Florida address for YZ and for the relevant bank branch. (Id. at PL 95–96.)

YZ's bank statements show that on July 12, 2013, Andrew Heckler transferred $100,000 to YZ with the notation "Andrew Heckler for stock purch." (Ex. F at PL 25.) On the same day, YZ transferred $100,000 to Hoekman with the notation "Hoekman passthru." (Id.) YZ also received deposits from Hoekman and transferred money to Hoekman, Cramer–Roberts, Creevey and YuuZoo. (See id.) There are also deposits from individuals that are not parties to this case that reference sales of YuuZoo shares. (See id. at PL 31.) YZ's bank account was closed on January 29, 2014. (Id. at PL 41.)

Hoekman appears to have played a major role in facilitating sales of YuuZoo shares. A shareholder who purchased shares in YuuZoo in 2013 described Hoekman as being "in charge of this public offering." (Ex. W at Y0099008.) In November 2014 and January 2015, YuuZoo sent Hoekman original stock certificates in YuuZoo for dozens of shareholders. (Exs. M, N.) "Jeffrey Hoekman" and Stonehenge were among the shareholders whose

stock certificates Hoekman received. (Ex. M at Y0103535, –585–86; Ex. N at Y0102214.) In a response to email. correspondence from YuuZoo to Plaintiffs and other shareholders who acquired stock in YuuZoo immediately before its listing on the SGX, John Hoekman stated in email correspondence that he had "assisted" many of those stockholders in acquiring their shares. (Ex. J.)

YuuZoo compensated Hoekman in both cash and equity for his part in brokering sales of YuuZoo shares. In 2010, YuuZoo paid Hoekman $25,000 as a "fee for capital raising." (Ex. Q.) In 2010, Hoekman was granted 174,173 stock options for "fund raising." (Ex. S at Y0007077.) In 2012, Hoekman sold $70,000 worth of YuuZoo stock and was allowed to keep those proceeds as compensation for "past capital raisings." (Ex. R.) At the end of 2013, Hoekman exercised 300,000 stock options in YuuZoo with a total exercise price of over $230,000. (Ex. S at Y0098790, Y0102022–26.)

In addition, Hoekman served as a director of entities affiliated with YuuZoo. Hoekman was an officer and shareholder of a Singapore entity named "Budai Holdings Pte. Limited," of which YuuZoo also was a shareholder. (Ex. U at PL 1256.) Meanwhile, YuuZoo has written off "bad debts" to an entity called Budai Gaming and recorded SGD 744,370 ($532,415) in sales to Budai Gaming in 2010. (Ex. U at Y0101327, Y0007178.) Budai Holdings Pte. Limited is since in liquidation. Hoekman was also a director of e-World Account (Pte.) Ltd., which was an indirect subsidiary of YuuZoo. (See Ex U at PL 1258; Motion, Ex. A at PL 593.) Hoekman's multiple directorships in entities affiliated with YuuZoo have not been addressed in the YuuZoo Defendants' submissions.

YuuZoo appears to have accounted for millions of dollars in receipts from YZ as sales. (See Ex. C (YuuZoo accounts receivable); Ex. D (YuuZoo Receivables Reconciliation spreadsheet); Ex. K (YuuZoo ledgers).) During one purchase of shares in YuuZoo, the purchasers inquired about why they were to "split the $300,000 [purchase price] between Yuuzoo and YZ International." (Ex. T at Y009874.) The question does not appear to have been answered. YuuZoo "accounted this as a payment by YZ toward the deals etc." (Id. at Y009874.) Plaintiffs argue that YuuZoo's dealings with YZ were in violation of its policy of dealing only with creditworthy counterparties. (See Ex. L.)

YuuZoo also appears to have had substantial dealings with Stonehenge, which is registered in New York. Stonehenge's Chairman was Anthony Williams and its President was Pat Kane, neither of whom is a defendant in this action, although Plaintiffs contend that Williams is a director of YuuZoo. (See Ex. N at Y0097123; December 27 Letter.) YuuZoo transferred thousands of shares to Stonehenge, and Hoekman appears to have played a role in at least some of those transactions. (Exs. M, N.) A "Live Nation Sponsorship Agreement" between YZ and two other entities provided that "YuuZoo Corporation BVI will initially receive all revenue of the contract" but that of the first $100,000 in revenue, "$25,000 shall be paid to Stonehenge Holdings, LLC" and "$100,000 shall be remitted to YZ." (Ex. V.) The letter agreement was addressed to Cramer–Roberts and YZ at the address of a New York law firm. (Id.) The exact relationship between Stonehenge, YuuZoo and YZ remains unclear.

YuuZoo's internal accounting documents show. that 15 percent of any "[f]unds received from business" that YuuZoo received from YZ or from Stonehenge, and 10 percent of any "[f]unds received from investors," were "Allocated for Repayment of Unpaid Fees." (Exs. G, H.) The recipi-

ents include "MFW" and Zilliacus, Yuu-Zoo's CEO, with MFW receiving more than 76 percent, and as much as 98 percent, of all such allocated funds. (Id.) The identity or ownership of MFW is unclear from the documents themselves, but Plaintiffs contend that MFW is a company controlled by Zilliacus. (Sussmane Decl. ¶ 15.)

The documents relied upon by Plaintiffs thus show that (1) Hoekman, who was based in Connecticut and New York, and who has not challenged this Court's jurisdiction over him, brokered sales of YuuZoo shares to Plaintiffs, two of whom are based in New York; (2) Hoekman was paid in cash and equity for his services; (3) Hoekman was a director of YuuZoo subsidiaries or affiliates; (2) Plaintiffs made payments to YZ for those shares; (3) YZ regularly transferred funds to YuuZoo; (4) YuuZoo accounted for any transfers from YZ as sales; (5) some portion of some funds received by YuuZoo from YZ were transferred to Zilliacus; and (6) YuuZoo paid Hoekman, sometimes in stock, for brokering sales of shares.

Although it is a close question, construing these documents in the light most favorable to the plaintiffs, and resolving all doubt in their favor, as the Court must, Plaintiffs have met their burden to establish that YuuZoo, by using YZ and the WF defendants to sell YuuZoo shares to Plaintiffs in New York, conducted business in New York, and that Plaintiffs' claims arise from that business activity. The YuuZoo Defendants argue that all of Plaintiffs' transactions in YuuZoo stock were with Creevey and Yuuu, which Creevey controlled. (See December 16 Letter at 2.) That may be true as to the Loan, which was secured by shares in YuuZoo held by Yuuu and which is not addressed by the Sussmane Declaration, but YuuZoo provides no basis for concluding that Creevey was the only counterparty to the transactions by which Plaintiffs bought YuuZoo shares in June and July. Indeed, defendants Cramer–Roberts and YZ were the recipients of the proceeds of the sale of those shares.

The Court can discern no plausible purpose for the complicated scheme described above, nor do the YuuZoo Defendants provide one, other than to hide that the real seller of the YuuZoo shares purchased by Plaintiffs in June and July 2013 was Yuu-Zoo itself. As Hoekman admits, the purpose of the scheme described above was "to maintain the confidentiality between buyer and seller." (Ex. E at PL 95.) In the same email, however, Hoekman mentions Cramer–Roberts by name, implying that he was not the true seller of the shares. (Id.) Hoekman also mentions that Cramer–Roberts would hold the money "while the shares are being issued." (Id.) That Yuu-Zoo would issue shares to the Plaintiffs following receipt by Cramer–Roberts of the money Plaintiffs paid for the shares belies the YuuZoo Defendants' assertion that "[they] had nothing to do with the Transaction." (Motion at 1.) Moreover, if Creevey was the counterparty to the June and July 2013 transactions who wanted to stay anonymous, he presumably would not have traveled to New York to meet with Plaintiffs in November 2013 to execute the loan documents on behalf of Yuuu. (See FAC ¶ 31.)

Similarly implausible is the YuuZoo Defendants' assertion that Hoekman did not act on behalf of YuuZoo. Hoekman does not dispute that he never disclosed the fact that he had a long-standing relationship with YuuZoo. The YuuZoo Defendants do not dispute that Hoekman has acted as YuuZoo's agent for prior share issuances, that he is a shareholder of YuuZoo, and that he was a director of its subsidiaries. At a minimum, those relationships represent a conflict of interest that YuuZoo was aware of when it, and its current and

former directors, Creevey and Cramer-Roberts, hired and paid Hoekman to represent them in soliciting clients in New York. Based on this record, the Court is persuaded that Hoekman's relationship with YuuZoo did not end before his role in the transactions of which Plaintiffs complain began. The Court therefore finds that Hoekman acted as the YuuZoo Defendants' agent in "facilitating" the transactions out of which Plaintiffs' claims arise.

The YuuZoo Defendants, therefore, by using the WF defendants to sell shares to Plaintiffs in New York, "purposely availed" themselves of the privilege of doing business in New York, and should therefore have foreseen being "haled into court" here. World–Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. 559. The YuuZoo Defendants' motion to dismiss for lack of personal jurisdiction should therefore be denied.

## C. RULE 9(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE

The YuuZoo Defendants also argue that the claims against them must be dismissed because Plaintiffs fail to establish "agency-based jurisdiction," and that such jurisdiction requires particularized allegations of fact pursuant to Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"). (December 16 Letter at 2.) The YuuZoo Defendants are correct that where a plaintiff claims a conspiracy between a principal and agent to defraud the plaintiff, "plaintiff's claims of agency also must comply with Rule 9(b)." Kolbeck v. LIT Am., Inc., 923 F.Supp. 557, 569 (S.D.N.Y. 1996), aff'd, 152 F.3d 918 (2d Cir. 1998). In such a case, "broad allegations are not sufficient under Rule 9(b). [Instead,] Plaintiffs must clearly identify each defendant's role in the scheme and what their connection was to the alleged misrepresentation." Landy v. Mitchell Petroleum Tech. Corp., 734 F.Supp. 608, 621 (S.D.N.Y. 1990).

The YuuZoo Defendants, however, appear to conflate a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) with a motion to dismiss for failure to state a claim under Rule 12(b)(6). None of the cases cited in support of this argument concerns a motion to dismiss for lack of personal jurisdiction, whereas the Motion seeks dismissal only on the basis that "the YuuZoo Defendants did not have minimum contacts with the United States in connection with the Transactions." (Motion at 4.) In any event, any pleading deficiencies regarding the YuuZoo Defendants' roles in the purported fraud could potentially be remedied by amendment. Consequently, the Court declines at this stage to evaluate the Complaint against the requirements of Rule 9(b).

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 146) by defendants YuuZoo Corporation Limited, YuuZoo Corporation, and Thomas Zilliacus (collectively, the "YuuZoo Defendants") to dismiss the First Amended Complaint is **DENIED.**

**SO ORDERED.**